Okay, the next case on the call is 5-13-0521 in re Lola F. Zeeb Revocable Trust, etc. May it please the court counsel. My name is Joel Benoit, and I represent Linda Murphy, the appellant across the pallet. This appeal involves two discrete issues, among several included in a lawsuit between Linda and her brother, James Zeeb, concerning their deceased mother's trust. Their mother's name is Lola Zeeb, and she died in 2011. Both children are beneficiaries of Lola's trust, and per the trust terms, they are to receive equal shares of the trust's assets. Since 2005, James has been the trustee of his mother's trust. Insofar as pertinent to this appeal, in this role, James took two acts after Lola's death which financially benefited himself to the detriment of Linda. And it's these two acts which are under review today. First, James belatedly filed a purported federal estate tax return for the estate and then claimed he could use the real estate value set forth in that return to establish the sales price under an option to purchase farmland granted to him under Lola's trust. If this is allowed to stand, James benefited and Linda was harmed in the amount of about $350,000. As to this act, the trial court determined that James acted properly, and Linda appeals that issue. The second act under review here is James' failure to make an election under Internal Revenue Code Section 2032A. Had he made this election, Lola's trust would have paid no Illinois estate tax. Since he didn't make the election, the estate had to pay approximately $150,000 in Illinois estate tax. And since Linda and James are due to divide the trust's assets equally, this essentially cost Linda $75,000. Now both of these issues concern the interpretation of the trust agreement, and they were both resolved via cross motions for summary judgment. So the appellate review standard here is de novo. Both of these issues also required this court to determine what Lola's intent was by examining the trust agreement in light of the law existing at the time she executed that agreement, and there were several amendments to the agreement over time. But at all times, Lola should be deemed to have known that, you know, trustees have certain fiduciary duties to beneficiaries, such as the duties of fairness and impartiality. It is looking at the trust documents, it was never Lola's intent to allow James to benefit himself to the detriment of Linda through the acts which are under review here today. Lola's intent was that her children should share equally in the trust assets. So again, the first issue presented is this question of the option, and if James exercises the option, what is the price he's required to pay? The trust agreement states that the sales price is to be set, and it sets forth a few different manners that it could be set. But the first one is, at the value used for grantors' federal estate tax return, if applicable. And it goes on to state, or at a value agreed to by Linda and James. And it continues on, or if Linda and James cannot agree on a value, they're each to basically get their own appraisal of the farmland. These appraisals are to be compared. If they're within 10% of one another, they're to be added together and divided by two. That's the price. And if they're not within 10% of one another, a third appraisal is to be obtained. And the three appraisals are added together, divided by three, and that's the price. Now in the briefs, both before the trial court and this court, there has been a lot of discussion as to this first means, of setting the purchase price, and there's been a lot of discussion. What does the word return mean? What does the qualifying phrase, if applicable, mean? And so on. But it's Linda's position that those issues don't necessarily have to be resolved if the court looks at the record and realizes that in July of 2011, James exercised his option and chose to set the purchase price via what we've called the multiple appraisal method. Now, again, Lola died in 2011. Shortly after that, James proposed several different ways that he and Linda might divide the land and the trust's assets. And a lot of these really didn't have anything to do with the language of the trust. It was just maybe we could work it out this way or that. No agreement was reached. And on July 22, 2011, James directed his attorney to send Linda a copy of a formal notice of exercising option, which was signed by James under oath. And in this notice, James states that he is exercising option to purchase all the trust's real estate and that he intended to use as his appraisal, and this would be, again, going back to the multiple appraisal method. James would have to have an appraisal. Linda would have one. They do this comparison, what have you. He was going to choose this Davis appraisal, one that the estate had already had prepared, to determine the purchase price. And then he notified Linda of her right under the trust agreement to get her own appraisal. Having received this, Linda did go out and get an appraisal. And her appraisal was referred to as the Clausen appraisal in this lawsuit. The Davis appraisal and the Clausen appraisal were compared, and their values were not within 10 percent of one another. And so under the formula, it was required that a third appraisal be obtained. Now, James didn't just send this formal notice signed under oath by him to Linda sent by his attorney. It was all very formal. He also followed up on this notice, and this is both after sending the notice and after Linda had obtained this Clausen appraisal, with many emails and communications to Linda that all made clear that James understood, exercised the option. I understand that you have your appraisal. I understand that we have to get this third appraisal. But a third appraisal was never forthcoming, and accordingly, a purchase price was not established. Now, the point that Linda makes and that I'm making here today is the option that's in the trust is essentially an offer from the trust outstanding to James, which he can either accept or not. But when he accepted that offer, a binding contract was formed between him and the trust. And we ask that this court recognize that and hold James to his agreement to buy the farmland via the multiple appraisal method. In this regard, it's important to recognize that at the time that James exercised this option, the only possible means available to set the price, the purchase price, was the multiple appraisal method. This is in July 2011. At this time, obviously, he and Linda had not reached an agreement on the purchase price. And the first possible means that we talked about, the federal tax return, there was no federal tax return, and everybody, as the record shows, understood that there was never going to be a federal tax return because the value of Lola's estate was roughly $3 million, and he didn't have to file a federal return unless the estate's value was in excess of $5 million. So if James wanted to exercise the option in July of 2011, which he clearly did, and which he did do it, the only means available to set that price was the multiple appraisal method. Contract was formed, and James is bound by that contract. Now, in this appeal, James has never explained why he believes that he was not bound by his acceptance in July 2011. There was a general argument that, hey, this was just a continuation of these negotiations with Linda to try to reach an agreement on some price, you know, so we could resolve this thing. But it really doesn't make any sense. If he's trying to work out an agreement with Linda, why does he accept an offer by the trust? He wasn't going to buy it. The land was owned by the trust, not Linda, and that's where the connection was made, you know, as far as offer, acceptance, contract. All he was doing was giving Linda notice that he had exercised his option, and then he further told her, which was consistent with the trust agreement's terms, hey, if you want to go out and get your own appraisal, now's the time to do it. She relied on that, spent her own money, got the appraisal, and that's already stated. Now, the price was breached because the third option or the third appraisal was never obtained. And what James tried to do is after this lawsuit was filed, James sends out an amended notice of exercising option. And this is in September of 2012. This is the first time Linda even learns that James had, in January of 2012, put together this supposed federal tax return and filed it with the IRS. So he sends her this amended notice and says, well, by the by, now I'm choosing to go by the first possible means of setting option, which is this filed federal tax return. Our point being the contract was formed in July of 2011. You can't undo it by saying, well, now I've changed my mind. I want a different number. I want a different means of setting the price. Did Jim make that decision as trustee or as an individual as the buyer, and does that make a difference? The decision? Well, at a later point in time, he decides, I'm not going to go the three appraisal route. I'm going to go with the federal state tax valuation. That is. And he's trustee of the trust, is he not? Right. He's trustee. And he has certain fiduciary duties as trustee to make sure that the terms of the trust are adhered to. So my question is, was he making that decision to use the federal state tax return, which is going to be lower than the three appraisal value because we know what two of the appraisals are. Are we pursuing that? So is he making that decision as trustee or individually as the option buyer, and does that make a difference? Well, each time that he, in July of 2011, when he elects to exercise his option, he's acting individually, but he's actually telling himself as he's the trustee, you know, he's telling the trustee that I'm accepting this. And the same thing back when it gets to September 2012, when he's trying to amend his acceptance or change it, he's again acting individually. But the person or the hat he's wearing when he decides, hey, I'm going to file a late tax return with the federal government in January of 2012. That's him acting. He's also the executor of the will. So he's either an executor or trustee at that point filing this purported estate tax return with the federal government. So that's the different roles. He wears all different kinds of hats in this thing. And as far as we get to that, too, his fiduciary duty as the trustee is like, why is he filing this? Everybody agrees it's not required to be filed, this federal tax return, late in January 2012. Who is this helping? Is this, you know, is this fair to all beneficiaries, including my client? No. It's all designed to help him out to better his financial interests at the expense of my client. And the record's clear on that. Well, we don't really have to. The court doesn't really have to get into all that. If you just look at this thing, the offer's out there in July 2011. He accepts it. There's a contract. Let me go ask you, too, Ed, for the Illinois estate tax, did he have to file a federal return? This, it's absolutely clear he did not have to file an Illinois return. No, he filed an Illinois return, Illinois estate tax return, they pay tax. Did he have to file a federal return as required by the laws of the state of Illinois for the Illinois estate tax? No. I guess the other reason he couldn't file a federal return was to establish the tax base in the real estate. But I think, I thought Jim was going to say, well, I had to file the federal estate tax return because Illinois law requires that in filing the Illinois estate tax return. What's been bantered about in this case is when you file the Illinois return, one of the things that you can file as a supporting document is called the federal form 706, which is the federal estate tax return. So you fill that out, but you don't have to file that. But you have to either file that form or something that has the same information. You attach that to your Illinois form. Now, in this case, they did file the form 706 with the Illinois return. The only difference that I can recall right now is Jim didn't sign that form that was filed. The form 706 filed with the state of Illinois. So you're saying for the Illinois return, you have to submit a 706, which may or may not have been filed with the federal government. No, I'm saying you have to either file a form 706 or a document with the same information as a 706. But that 706 that you're filing with the state never has to be filed with the federal government. It's just kind of a lot of times, and I'm not a tax expert, but a lot of times the Illinois law is kind of tied to the federal law and to make things simpler. And even we'll get to this on this 2032 election, Illinois kind of follows the federal government on some of these issues. So it's just easier if the forms are the same or better. But it's not required. And our position is, and I haven't gotten to that yet, but filing something with the state of Illinois, even if it is a form 706, is not a federal, the grandest federal estate tax return. They're two different things. Do you have any other questions on that issue or no? Okay, so again, I'd just like the court to focus a little bit on that. What happened in July 2011, the contract was formed. That should end the matter. If the court determines that a contract was not formed in July 2011, then we move on to the question of the form 706 that James did file with the IRS. Now, interestingly to me at least, to me it's just absolutely clear why he filed this document with the IRS late. He wanted to use it so he could plug in these numbers, get a lower price for the land, pursue it to the trust agreement. The trial court didn't see it that way. The trial court said, I don't think he did anything wrong as far as motives. But what I found a little disturbing is the trial court saying that it did not matter why James filed the form 706 with the IRS. All that mattered was that he filed it. And I think it's very important why and what James filed with the IRS. And again, going back to Lola's intent, what did she intend? And the overall intent is this, each child gets the same amount out of this trust. Also, I want the court to consider James' fiduciary duties. Why is he filing this with the IRS? It's not only a violation, you know, it is a violation of his fiduciary duties. So the issue, if the court finds no contract in July 2011, is what does it mean when the trust document says, grantors, federal, estate, tax, return, common, if applicable. And I've provided, you know, definitions out of dictionaries, what does the word return mean. It generally means it's a document the government requires to be filed regarding taxes, establishing taxes, what have you. Under all these definitions, there's no way what James filed with the federal government can be deemed a return. As everybody agrees, there was no requirement that a return be filed. I also cite and rely on the federal 7th Circuit case, Henry Payne, sets forth a four-part test to determine what can be deemed a federal return. And the fourth part of that test, I think, is the key here, because the document filed with the IRS must evidence an honest and reasonable endeavor to satisfy the taxpayers, and here that would be the estates, legal obligation. Again, when there's no obligation to file a return, they can't meet this test. In addition to the word return, the qualifying phrase, if applicable, the trial court found that the dictionary defines applicable as meaning capable or suitable of being applied, appropriate, and that synonyms include practical and usable. And I agree with that. But then the trial court concludes that if applicable means if filed. And I just don't – I cannot follow that logic, and it's not explained any further than that. The Payne opinion I cited to you earlier, they say anything that is a return is already filed. So the trial court's finding that if applicable means if filed is simply redundant. If applicable means something else in the context of this phrase. It means if federal tax law requiring a return are applicable to the estate. The if is a condition precedent. Something's got to happen, and that something is the law's got to require it, and you've got to file a return. I'm running out of time here. To me, it's a two-step process. If applicable, a return has got to be filed. You'll have to file it, or you can come back to me. Thank you. Thank you. May it please the court, counsel. My name is Matthew Hans, and I represent James Zed in this matter. As the opposing counsel just mentioned, this appeal does involve two issues of trust and compensation. The first being what is the proper price for the option that is granted to my client under the trust? The circuit court correctly ruled that the value is the value that was used in the federal estate tax return. And that was a summary judgment ruling which we assert there was no material factual issues involved with. There was no dispute that the trust granted Mr. Zed that option. There was no dispute that Mr. Zed exercised that option. There was no dispute that Mr. Zed filed the form 706, which was the federal estate tax return. And there's no dispute that that return included the Davis appraisal as its value. Now, the option price is set in the trust in section 701B3, and it provides three choices, and we assert that the choices have a preferential rank. The first choice that listed is the option of the value used in the federal estate tax return, if applicable. Among other things, we believe that the words if applicable means that if there is a federal estate tax return, that is the value, that is the price of the option, and the reader need not move on to the other alternatives. I think that's what the circuit court found, and I think that's a very reasonable, common-sense interpretation. The second option is the option of any value that the parties can agree upon. There was no agreement. And the third option is this multiple appraisal method, which should be used if the parties cannot agree upon a value. That condition indicates that, yeah, you know, that multiple appraisal value, that is the third option. That option clearly comes after whether or not the parties can agree. Excuse me. So in section 701, we believe that there is a ranking of priority of what the option price should be. Now, let me ask you the question I asked opposing counsel. Jim is wearing two hats. He's holder of the option, and he's trustee. Right. And he made the decision to initially go down the route of the three appraisal routes since they couldn't reach an agreement on the price, and then he changed and made a decision to file a federal estate tax return, which he had the ability to do as trustee. The decision to make then that he would use that as the value for the purpose of the option, the federal estate tax valuation, was that made individually or as trustee, or does it make a difference? That decision was made as trustee, as trustee has discretion to make tax elections for the trust. And therefore, he was acting completely within his discretion when he filed the federal estate tax return. My question is the decision then to take that valuation for purposes of setting the value under the option. Was that made as trustee or was that made as the holder of the option? Because the sister is saying, well, that federal estate tax value we know is going to be lower than what the three appraisal route would end up being. So if he makes that decision as trustee, is he fulfilling his responsibilities, fiduciary responsibilities, which had outlined this procedure to make sure it was a fair price? Rick, you're correct. The only person authorized to file a federal estate tax return would be the trustee. So when he filed it, he was filing it as trustee. I disagree with the premise and with their argument that the July 11th notice committed my client as trustee or as individual to the multiple appraisal method. I think that is a stretch and an unsupportable reading of the notice. If you look at the notice, the notice clearly states that, you know, he has obtained the Davis appraisal. He, quote, intends to use the appraisal for federal estate tax purposes, specifically mentions federal estate tax purposes. The next paragraph in paragraph three states that he intends on using the values of this appraisal to determine the purchase price. I think the fair reading of this notice is that he's saying, I have an appraisal. It's going into the federal estate tax return. That's going to be the option price. He does go on to say that she's able to obtain an appraisal on her own. Perhaps that was just done to further the negotiations. But I think it's an unfair reading and really, honestly, a stretch to say that that is somehow binding him to use the multiple appraisal method. Well, and the reason for asking that question, this comes to us on cross motions for summary judgment. The parties are saying there's no genuine issues of material fact here. And my question gets to, is he making that election, I want to take the federal estate tax valuation as the option holder or am I doing that as trustee? It gets to his motive as to why he's doing that, which may create issues of fact, which a trier of fact would have to look at and say, you know, is he acting as trustee or not? What's his motive? What's he doing? Why is he doing this? Which would create issues of fact, which would cause it to have to go back. I do not think there are issues of fact. I think the facts revolving around the reason behind filing the federal estate tax return are clear. They are outlined in the Pembroke affidavit. As you mentioned, you would file a federal estate tax return for the benefit of all beneficiaries by setting a value for the estate, the assets of the estate. You also provide a degree of comfort for all beneficiaries that the IRS would not challenge that value later except for limited circumstances. And as I understand it, and I'm not a tax expert either, by filing a federal estate tax return, you start the statute of limitations and the time period in which the IRS could challenge the value that you've used. So there's a benefit to the entire trust and to all the beneficiaries to file the federal estate tax return, and that's supported by the affidavit of the CPA, Mr. Pembroke. On the other side, I don't think that's controverted. I mean, they make allusions and they try to impugn his motives by pointing to different facts. But the only facts that we have are that affidavit. The only facts as to why he filed a federal estate tax return are there. And they go on to question whether or not the Form 706 was a federal estate tax return in any event. To that, I would just respond that the IRS certainly considered it a federal estate tax return. The IRS did not reject the document. It's not required. They accepted it. They filed it. They processed it. They issued a closing statement. The closing statement's in the record. And to quote the closing statement, the IRS says, this letter is evidence that the federal estate tax return has been accepted as filed. And I think they would be a good judge of whether or not the Form 706 is an estate tax return. The opposing counsel tries to point to the issue, the case, in the pain to define what is a tax return. You know, first of all, pain involved a debtor in bankruptcy trying to obtain a discharge for a tax debt after a tax return had been filed. And that court was interpreting the bankruptcy code. And, in fact, that court itself underlines or that court disowns the idea that that definition of return can be applied elsewhere. That court itself says that, quote, nonsense results if return must bear the same meaning everywhere. Here, I think we're trying to interpret the trust. I don't think it's worthwhile or wise to go to a seven-certain case involving bankruptcy. And further, I'd like to bring the court's attention to the case of Colson, which is cited by the other side. There, the court was trying to determine whether or not somebody had filed a return and trying to determine whether or not that was an honest and genuine attempt to satisfy a tax obligation. And there, the court said that, you know, you don't look at the facts and circumstances surrounding the filer. You need to look at the document itself. And Colson ultimately reached the decision that the filer's subject of intent is irrelevant. I would say that applies here. I mean, looking at the document itself, looking at the reasons that have been provided in the Pembroke affidavit, show that this was a legitimate federal estate tax return. You know, the other side claims to shove a lot into the words if applicable. They want to make sure that if applicable means if required. You know, their mother could have written the trust that way. She amended the trust many, many times. Restated it a few times. If she wanted the federal estate tax return to be a required document, that could have been made explicit. She did not. She used a more general term, if applicable, which in this context seems appropriate. We're seeing here that there are situations where you would have a federal estate tax return prepared and you would use it for the state, but you may not necessarily file with the federal government because you would fall below the exception. But there are times where it's beneficial to file with the federal government. So it must be common in the federal or in estate planning that there would be times where a federal estate tax return could be filed but not required. So knowing that, I mean, I believe that their mother understood that and didn't make it a requirement that the federal estate tax return be required. She just said if applicable. And last, I would like to address the issue of the allegation that my client has somehow breached his fiduciary duties. You know, the duties of a fiduciary are outlined in the trust. And in this trust, the grantor, their mother, knew that my client would be the trustee. She provided that trustee with the discretion to make tax elections. He was going to be handling the tax decisions for the trust. She also said that this option price is going to be tied to the federal estate tax return if applicable. So the trust document itself shows her intent that he was going to have some discretion over this option price. She obviously trusted and was comfortable with him exercising that discretion. And here, my client did exercise that discretion. And I would submit if their mother was comfortable with him exercising that discretion, then the trial court was proper allowing him to exercise that discretion, and that's what this court should do as well. If I turn quickly to the second issue, the basis of our cross-appeal, there the trial court improperly ruled that my client was liable under 704 of the trust for failing to fully comply with Section 2032A of the Internal Revenue Code. Now, as I mentioned, the trust provides my client as trustee discretion to make tax elections. The trust did not specifically instruct the trustee to elect a 2032A treatment. The trust leaves that to his discretion. As an executor and trustee, my client elected not to make the 2032A election for a number of reasons. The 2032A requires a qualified heir to continue using the land, and in this case, using the land as farmland for 10 years. My client made the only correct decision in this case that 2032A tax treatment was really not an option. It was not practical. Right now, my client is 65 years old. The election would require him or some other descendant to farm the land until 2021, when he'll be 75 years old. No other descendants, including Ms. Murphy or any of her children, have ever expressed any intent to farm the land. By not making the election, he avoided the risk that the value of the land or the tax treatment would be challenged and that there would be an additional tax once the conditions of 2032A could not be complied with. In this case, Ms. Murphy is simply second-guessing that reasonable decision that was made within his discretion as trustee and executor. The provision that is at issue here is 704, and that provision says that a descendant who fully fails to comply with 2032A may incur liability for the tax generated. And I think there are two key words or provisions in 704. First is descendant. What my client did in not electing 2032A treatment was not an action as a descendant. That was an action only an executor could take. That's according to 2032A. So it wasn't an action that he took as a descendant. Secondly, the word comply in 704. The word comply presupposes that 2032A has already been elected and is applicable to all of the descendants. As I think of it, I can't comply with a traffic light unless somebody has already come on and turned it on. So I think the reasonable reading that reconciles the two provisions, 604 and 704, is that 704 speaks only to beneficiaries and only in situations where they're already enjoying 2032A tax treatment. What my client did, he did under 604 as a trustee and executor in making a tax election. And further, the reasoning of the opposing counsel in the trial court below is that my client was liable because there was a happenstance that he happened to be beneficiary and, or a descendant rather, and trustee. Because he just, happy accident, he was both. He was required to deal with both. That logic seems inconsistent to me. Because under that logic, if there was a different trustee and executor, somebody who was not a descendant, then there would be an entirely different set of discretion. In that case, where there's a non-descendant trustee, he'd be free to make any tax election. So the only real cause of liability here seems to be that he just happened to be both a descendant and a trustee. And I think that kind of reasoning leads to inconsistent results and is not what is intended. To kind of summarize both arguments, I'd like to go back to one of the bedrock principles of trust interpretation. It's that we look for the intent of the grantor. We try to interpret the plain, ordinary meaning of the words. Here, as I mentioned, their mother knew that my client would be the trustee. She knew that the option price would be tied to a federal estate tax return. She knew the trustee would have almost complete discretion over what tax elections are made. She also knew that there would be this tax election regarding 2032A that could be made. Now, obviously, Ms. Murphy disagrees with the value that is used. And this really comes down to her disagreement about the number. But at the end of the day, she will still be receiving half of the value of the estate. It's just the estate she doesn't agree with. That's not a power that she has in the trust. That power was properly given, or not properly. That power was given by their mother to my client. And I do not believe that she should now be allowed to second-guess that intent. Wasn't there also an intent to have an average of three appraisals? You left that out when you said the intent. Is that not true? I believe that the plain reading of 701B3 is that it was her intent that that would be the last choice. But it was her intent. It was her intent, but I believe it was her intent that it would be the last choice. If the other two, if the federal estate tax return is not applicable, they couldn't agree, that was kind of her last stitch-up. And I believe that a fair reading of that provision is that her intent was that they should be in those provisions. We took your motion to dismiss with the case. You just don't think you can stand on what you filed in connection with it? Yeah, I'll stand on what I filed. At this time, as a practical matter, I think resolution of the issues that have been briefed and argued here today would be helpful for the parties. Otherwise, I'll just stand on the motion to dismiss. With that said, if there are no further questions, I respectfully request this court to affirm the circuit court's ruling on the option price and reverse its ruling on the 2032A tax election.  Thank you. Thank you both. The court has asked a couple of times who was acting, and it would be September 2012, when there was a supposed amended notice of exercising the option. And I just want to make clear that the only person that could accept the outstanding offer from the trust is Jim individually. It couldn't have been the trustee. To address some of counsel's arguments, it is clear that Lola made Jim the trustee. But that does not give him absolute power to do whatever he wanted to solely benefit himself. He could make tax elections, but like in this case, when he's making tax elections solely to benefit himself, it's improper. He's supposed to act fairly, impartially. It's just not a wide open power. In that regard, I would like the court to recognize, and this is on that failure to make the 1032A election. The court, again, has to look at everything chronologically. In July 2011, James exercises the option. In December 2011, he files the tax return and does an election, 2032A provision. Who benefits from that? It's Jim, because Jim knows at that point that he's going to be the owner of this land. He's going to be the one under this requirement that he continue to farm or materially participate in the management of that farm for the next 10 years. He's going to be the one, because he did not elect it, the basis went up. So if he decides to sell during his lifetime, his basis is higher, his tax liability is less. By making the decision, he pushes off the tax liability onto the estate, and again, half of that lands with my client, Linda. It's improper. One of the things James' counsel raises is, what would happen if James wasn't the trustee? What if another trustee made this election not to go with the 2032A? Well, the simple answer is, another trustee, if they decided not to, for legitimate reasons, is not going to benefit financially by doing so. They're acting impartially. If the court looks at the record chronologically, it's clear what happened here. Going back to the Pembroke affidavit as to why the return may have been filed, this is all in the briefs and everything. But the Pembroke affidavit, if Pembroke was an accountant, a lot of it contains a lot of legal conclusions, which we brought in our brief. The court shouldn't accept somebody's affidavit for legal conclusions. The court is able to look at the briefs and find the law itself. Also, they say what Pembroke thinks, Jim himself, there's no affidavit by Jim saying, I did this because of X, Y, Z. Going to the Payne opinion again as far as what is a return. What I would like the court to take from the Payne opinion, besides the fact that it's got to be an honest and reasonable endeavor to comply with the, in this case, the estate's tax obligations, is also Payne stands for the proposition that not every document filed with the IRS is a return. And people have lots of motives for filing things with the government. And some of those cases, they did have to do with bankruptcy matters. People try to gain advantage of bankruptcy. But the rule and set forth in the Payne opinion is derived from two U.S. Supreme Court case opinions that had nothing to do with bankruptcy. To conclude, I think that the key to this case is, as I stated at the beginning, Lola's intent. Lola's intent is that her trust assets be divided equally among her children. Jim's acts, the acts that we're looking at today, show that. Thank you, guys.